# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

### SEPTEMBER TERM, 1873.

## C. FOLLANSBEE *et al.*

*v.*

## JOHN D. PARKER.

1. ACCOUNT RENDERED—*acceptance by acquiescence.* Where an account of a banker is rendered, showing a sale of a party's stocks, which the latter receives without objection, in ignorance of the facts, his acquiescing in the same, under such circumstances, will not preclude him from afterwards disputing the account.

2. SALE OF STOCKS—*where broker makes two sales at different prices, whether customer is entitled to price received on first sale.* Where a customer of a bank in Chicago had railroad stocks which were held by the bank, in its name, in other banks, in the city of New York, and, during the great Chicago fire, directed his banker to telegraph immediately and have them sold, and directed the dispatch to be sent from a station outside of the city, under the belief that none could be sent from the city, and, after this, the bank sent a dispatch from the city, under which more stocks were sold than those it held for such customer, and, on the next day, sent another dispatch from the station outside the city, which did not get through for some time, and under which other railroad stocks were sold at a much lower price than the first, it was *held*, that the customer was entitled to recover of his banker, for his stocks sold, the price received at the first sale, as he was the first to give a direction to sell.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. LEONARD SWETT, for the appellants.

Messrs. GOUDY & CHANDLER, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, brought to the Cook circuit court, by John D. Parker, against C. Follansbee & Son, to recover the proceeds of certain stocks in the Chicago, Rock Island and Pacific Railroad Company, owned by the plaintiff, and sold by the defendants, bankers in Chicago.

The cause was tried by the court, without the intervention of a jury, who found for the plaintiff ten thousand dollars in damages, for which judgment was rendered.

To reverse this judgment, the defendants appeal, and insist, here, that the finding and judgment were against the law and the evidence.

The questions arising on the evidence are, have appellants incurred any liability to appellee, and of what nature and to what extent; and these to be determined by the evidence.

The transaction out of which the controversy arises, was, selling certain stocks owned by appellee, but standing in appellants' names on the books of their brokers in the city of New York, and which they alone could control.

The manner of doing this kind of business was this: If an application was made to appellants to purchase a certain number of shares of a particular stock, they telegraphed to their brokers in New York to make the purchase. When advised of the purchase, appellants gave notice to the party making the application, who was required to put up the margin agreed upon, or to pay the price. These shares were entered on appellants' books in the name of their customer. When the customer desired to sell, he gave an order to that effect to appellants, and they would telegraph to their brokers

in New York to make the sale, who reported results to defendants, and they thereupon rendered their account to their customer. All such purchases stood on the brokers' books, in New York, in the name of appellants, their customers being unknown in the transaction.

. At the time of the fire of October ninth, 1871, appellee was the owner, on the books of appellants, of ten hundred and fifty shares of stock, of the par value of one hundred dollars, in the Chicago, Rock Island and Pacific Railroad Company. About nine o'clock of the morning of the ninth, the fire still raging, and consternation brooding over the city, Merrill C. Follansbee, one of appellants, and his brother Frank, were on the steps of the dwelling house of appellee, on Wabash avenue, and on inquiry by Merrill Follansbee what appellee would have done with his stocks—it being understood, when the extent of the calamity should be fully known, a panic would ensue, causing a great depreciation in stocks—he was told to sell out at once—to sell out that day —appellee protesting he would not be sold out in a panic. When some doubt was expressed about their ability to get a dispatch off, under the circumstances, appellee said, go outside of the influence of the fire, suggesting Englewood or Calumet; or, as Thomas Parker testified, go anywhere, the direction being distinctly stated and understood that the dispatch must go that day, and the sale be made on that day.

On leaving appellee, Follansbee met Mr. Williams, another customer, near Burlington hall, and who then held one thousand shares of this stock, and he directed Follansbee, not, as is stated by appellants, to go to the Burlington crossing and send a dispatch, but he directed them to sell, and requested that Frank, or some one, should be sent "to the nearest telegraph station, near Chicago, to get a dispatch through as early as possible."

Merrill Follansbee proceeded immediately to the telegraph station at the Burlington crossing, and succeeded in getting a dispatch started on the wires. That dispatch was as fol-

14       FOLLANSBEE *et al. v.* PARKER.       [Sept. T.

Opinion of the Court.

lows: "Sell 3000 shares of Rock Island; 500 Erie; also, select and sell of our stocks 1000 shares." This dispatch was sent to Scott, Strong & Co., appellants' brokers in New York, who are proved by appellants' witness to have had at that time a sufficient amount of these stocks to answer appellee's claim and Williams' also, with a surplus over.

On this dispatch, received by these brokers on the 9th of October, they made the sale ordered, at an average of one hundred and seven dollars per share for Rock Island, and appellants settled one thousand shares with Mr. Williams, on that basis.

About two o'clock in the afternoon of this day, Frank Follansbee reached Englewood, a station about six miles south-west of the Burlington crossing, and there wrote out on one of the blanks of the telegraph company this dispatch: "Sell for our account half of our stock." This was directed to Scott, Strong & Co., and to Weston & Debillior, and to A. M. Kidder & Co., who were also brokers of appellants.

It is not precisely certain when this dispatch reached New York, but the probability is, it was not received there until the eleventh, before the arrival of which, sales of Rock Island stock had been made at about one hundred and one-fourth, and for these proceeds, on this basis, appellants, some weeks thereafter, presented their account to appellee, showing a balance due them of four thousand four hundred and seventy-one dollars ninety-five cents.

It is claimed by appellants that no objection was made by appellee to this account when presented, and to the one subsequently presented, augmented by an item of indebtedness of Thomas Parker, the father of appellee, growing out of a similar transaction, and credited by a note of Burdick & Mead to appellee, for eight thousand eight hundred seventy-one dollars ninety cents, which had been deposited by appellee with appellants long anterior. This account also credits appellee with these stocks at one hundred and one and one-

fourth, and shows a cash balance due appellants of nine hundred forty-six dollars ten cents.

To these accounts so rendered, appellants insist appellee made no objection until near three months after they were rendered. On these questions there is much conflict of testimony, and we have not the means, such as the circuit court had, of determining where the real truth lies, and must take the finding of the court as correct, barely suggesting that it does not look reasonable that appellee should have accepted the statement of the account as correct and binding on him, and be in ignorance of the real facts. Whatever he may have done savoring of acquiescence, whilst ignorant of the facts, can not, and should not, prejudice him.

Appellee, it appears, went to New York, to the brokers Scott, Strong & Co., to ascertain the facts. Having ascertained them, and not being satisfied he had been fairly dealt with by appellants, this suit was brought.

It is claimed by appellants that, inasmuch as they did send a dispatch from Englewood, and this by the special order and direction of appellee, they should be answerable to him only for the results of that dispatch. They contend they have a right to claim that dispatch as appellee's. The contents of the dispatch should dispel such an idea. It was, "Sell for our account half of our stocks." This was a general order. Had it been an order to sell ten hundred and fifty shares of Rock Island, being the amount and kind of stocks then held by them for appellee, there would be some plausibility in the claim. There seems to us no good reason why this dispatch should be claimed as appellee's. A careful reading of the testimony, considered in reference to the circumstances surrounding the parties, satisfies us that it was not the understanding of any of the parties that appellants should be confined to any telegraph station. It was the fixed and clearly expressed determination of appellee that his stocks should be sold on the ninth, and not on any other day. Englewood and Calumet were suggested, but the direction was, in effect, go

anywhere out of the influence of the fire; and this was Thomas Parker's testimony.

The object and desire of appellee was, to get a dispatch off on the ninth, before the panic should produce its expected effects; and Mr. Follansbee himself testifies he would not have sent to Englewood had he known he could send a dispatch from the Burlington crossing.

Appellants did get a dispatch from this "crossing," on the morning of the ninth, directing their brokers to sell three thousand shares of Rock Island on their account. Why appellants should appropriate this telegram to the benefit of a customer not so vigilant as appellee, we are at a loss to understand. It was as much the dispatch of appellee as of Mr. Williams, and could be more justly claimed as appellee's, as he was prior in time. The pretense now set up by appellants, that the benefit of this dispatch was extended to other customers besides Williams, is as unjust as it is frivolous, for no other customers but appellee and Williams were making any efforts to effect a sale until the evening of the ninth. Appellee was first in time, and is entitled to the fruits of his vigilance.

We are unable to put any other construction upon this transaction than this. It was of vast importance to appellee that his stocks should be sold before a panic. He declared more than once he would not be sold out in a panic, and as Rock Island stock, more than sufficient to cover the amount owned by appellee, after satisfying Williams, was sold on that day, the price received therefor on that day should be the basis on which appellee's claim should be adjusted.

It was the evident understanding of the parties that appellants should avail of the readiest facilities to get a dispatch on the wires. These were found at the "crossing," and there was no use in sending to Englewood. Appellants' witness says, had he known a dispatch could have been sent from the "crossing," he would not have sent to Englewood.

But in sending to Englewood, no sufficient diligence was used at a time when minutes were of great value. The distance from the Burlington "crossing" is about six miles, a distance which could be easily passed over by an ordinary roadster in one hour. The dispatch was sent from the crossing about nine o'clock in the morning of the ninth. The messenger did not reach Englewood until about two o'clock in the afternoon. This can hardly be called such diligence as appellants should have exercised.

The mistake of appellants is, in appropriating the telegram sent from the "crossing" to Williams and his other customers, to the exclusion of appellee, the most vigilant of all.

There is no point made on the amount of the money, it being conceded if appellee is entitled to recover on the basis of one hundred and seven, the finding is right.

We fail to see wherein the finding is against the law or the evidence. The judgment of the circuit court must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT and Mr. JUSTICE SHELDON, dissenting:

The persons present at the time the direction to sell the stock was given, were John D. Parker, the appellee, Thomas Parker, his father, James Mills, and Merrill Follansbee, who testified as follows upon that point:

*John D. Parker*—"It was then suggested, Englewood or Calumet—to send the dispatch from one of these points, and I told him (Follansbee) to go to one of these places and send the dispatch, and he said he would."

*Thomas Parker*—"I told him (Follansbee) if he could get a dispatch through from Englewood or Calumet, or anywhere, to send it, and have our stock sold."

*James Mills*—"Mr. Follansbee then said it was somewhat difficult to get off a dispatch; and it was agreed between them that young Follansbee should go to Englewood or Calumet and send a dispatch, and have the stock sold that day. That was about the substance of the conversation."

Mr. Justice Scott and Mr. Justice Sheldon, dissenting.

*Merrill Follansbee*—"In execution of Mr. Párker's order, I sent my brother to Englewood, and instructed him to telegraph for the sale of half the stocks we held, to all the houses with which we had accounts. The Englewood dispatch was sent to cover Mr. Parker's order and a portion of what other stock we had there."

All the stock was held for their customers, and none of it for the Follansbees themselves.

We think the clear preponderance of the testimony is, that Follansbee was directed by Parker to telegraph from Englewood or Calumet, and that, in obedience to orders, the former was bound to telegraph for Parker from one of those places; that the dispatch from Englewood should be considered as Parker's dispatch, and that he is entitled only to the result produced by that dispatch. The appellants, as agents of appellee, were not at liberty to disregard their instructions. The directions were explicit to send the dispatch from Calumet or Englewood for the sale of their stock. The reason assigned was, that they did not want to be sold out in a panic, which it was feared might ensue before a dispatch could be sent from a city office. Having obeyed the instructions given, appellants ought not to be held liable for the failure of the dispatch to go through. Had they neglected to send a dispatch, as agreed upon between the parties, then, in case the telegram from the "crossing" had failed to go through in proper time, they would undoubtedly have been liable for all damages, if any, that appellee might have sustained by reason of not telegraphing from Englewood or Calumet.